[Cite as *State v. Woody*, 2016-Ohio-631.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     14CA010679 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KEITH J. WOODY | OBERLIN MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.     14TRC01136 |

DECISION AND JOURNAL ENTRY

Dated: February 22, 2016

---

SCHAFER, Judge.

{¶1} Defendant-Appellant, Keith Woody, appeals the judgment of the Oberlin Municipal Court denying his suppression motion and subsequently imposing a jail sentence above the mandatory minimum. For the reasons set forth below, we affirm.

I.

{¶2} On the morning of March 22, 2014, Sergeant Michael Murphy of the City of Amherst Police Department was on patrol in a marked cruiser at the State Route 2 and State Route 58 intersection in Amherst, Ohio. At roughly 1:30 a.m., Sgt. Murphy received a radio dispatch informing him that a citizen had called in to report a possibly intoxicated driver traveling northbound on State Route 58. The caller also informed the dispatcher that the vehicle in question was in front of him and was driving "all over the road." The caller provided his name, contact information, and present location to the dispatcher. From the provided

information, Sgt. Murphy was able to identify the caller as a local tow driver with whom he was familiar.

{¶3} Upon receiving this information regarding the possibly intoxicated driver from the radio dispatcher, Sgt. Murphy immediately observed the vehicle in question traveling northbound on Rt. 58. Once the vehicle passed his location, Sgt. Murphy turned onto Rt. 58 and began following the vehicle in question for roughly one-quarter mile, during which time he observed the vehicle weaving within its lane of travel, going side to side. Sgt. Murphy then effectuated a traffic stop. Sgt. Murphy identified the driver of the vehicle as Keith Woody. Sgt. Murphy also observed and identified an individual sitting in the front passenger seat. Sgt. Murphy detected a strong odor of alcoholic beverage coming from within the vehicle and emanating from the driver's mouth as he spoke. At this point, Sgt. Murphy had the driver exit the vehicle in order to perform a series of field sobriety tests. Following the conclusion of those field sobriety tests, Sgt. Murphy placed Woody under arrest for operating a vehicle under the influence of alcohol.

{¶4} Woody was charged with one count of driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), one count of operating a motor vehicle with a prohibited blood-alcohol concentration in violation of R.C. 4511.19(A)(1)(h), and one count of weaving in violation of Amherst Codified Ordinance ("A.C.O.") 331.34. Woody filed a suppression motion, which the trial court denied following a hearing. Woody subsequently pled no contest to driving under the influence in violation of R.C. 4511.19(A)(1)(a) in exchange for the State dismissing the remaining two counts. The trial court accepted Woody's no contest plea and found him guilty.

**{¶5}** The trial court sentenced Woody to serve 180 days in jail with 150 days suspended on various conditions. The trial court stayed execution of Woody's sentence, pending resolution of this timely appeal, which presents three assignments of error for our review. Since the first two assignments of error implicate similar issues, we elect to address them together.

II.

**Assignment of Error I**

**The trial court erred in entering judgment against Appellant as there is insufficient evidence to establish reasonable suspicion for an investigatory stop of Appellant.**

**Assignment of Error II**

**The trial court erred when it found that the officer had sufficient indicia of reliability based on a citizen's tip that allowed the officer to make an investigative stop of Appellant's vehicle.**

**{¶6}** In his first and second assignments of error, Woody argues that the police officer's investigative stop was unconstitutional as Sgt. Murphy did not have a reasonable, articulable suspicion that criminal activity was afoot. We disagree.

**{¶7}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.,* citing *State v. McNamara,* 124 Ohio App.3d 706 (4th Dist.1997).

**{¶8}** The investigatory stop of an automobile is a seizure for purposes of the Fourth Amendment and, consequently, must be based on a law enforcement officer's reasonable suspicion "that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays,* 119 Ohio St.3d 406, 2008–Ohio–4539, ¶ 7. In justifying the stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21 (1968). The reasonableness of the officer's actions is evaluated in light of the totality of the circumstances surrounding the stop. *State v. Freeman,* 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. This is because:

> The reasonable suspicion necessary for such a stop * * * eludes precise definition. Rather than involving a strict, inflexible standard, its determination involves a consideration of "the totality of the circumstances." *United States v. Cortez,* 449 U.S. 411, 417 (1981). Under this analysis, "both the content of information possessed by police and its degree of reliability" are relevant to the court's determination. *Alabama v. White,* 496 U.S. 325, 330 (1990).

*Maumee v. Weisner,* 87 Ohio St.3d 295, 299 (1999).

**{¶9}** When the officer who conducts an investigatory traffic stop relies solely on the information provided through dispatch, "the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." *Id*. at paragraph one of the syllabus. When the dispatch is based on information provided by an informant's tip, "the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip. The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id.* at 299. Relevant factors in this determination include "the informant's veracity, reliability, and basis of knowledge." *Id.*, citing *White,* 496 U.S. at 328. In making this determination, courts consider whether the informant can be classified as an anonymous tipster, a known confidential informant, or an

identified citizen informant. *Id*. at 300. As a general rule, anonymous informants are "comparatively unreliable," and a tip "will generally require independent police corroboration." *Id.*, citing *White* at 329. On the other hand,

> an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: "[I]f an unquestionably honest citizen comes forward with a report of criminal activity— which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary."

*Id*., quoting *Illinois v. Gates,* 462 U.S. 213, 233–234 (1983).

**{¶10}** Here, Sgt. Murphy initiated a traffic stop based on information relayed to him via radio dispatch. This dispatch informed Sgt. Murphy that a citizen had called in to report a possibly intoxicated driver headed northbound on Rt. 58 in Amherst. The citizen informed the dispatcher that the vehicle in question was driving "all over the road." Although the citizen informant did not testify at the suppression hearing, it is undisputed that he provided the dispatcher with his name, present location, and contact information at the time of phoning in his tip. Sgt. Murphy testified that he recognized the citizen informant's name at the time that he received the radio dispatch and knew him to be a local tow driver. Sgt. Murphy also observed the citizen informant's vehicle driving in proximity to Woody's vehicle on Rt. 58 just prior to effectuating the traffic stop of Woody's vehicle.

**{¶11}** Because the tipster was an identified citizen informant, we may ascribe a high degree of reliability to the information that he provided, and it need not be supported by independent observations by Sgt. Murphy. *See id*. The record demonstrates that in this case, the citizen informant observed erratic driving by a possibly intoxicated driver, which caused the informant to call the police. The informant told dispatch that the vehicle in question was driving "all over the road." The caller informed dispatch that he and the vehicle in question were driving

northbound on Rt. 58 in Amherst, which is where Sgt. Murphy observed Woody's vehicle. We note that although Sgt. Murphy was not legally required to independently corroborate the citizen informant's tip in this matter, he did testify that he observed Woody's vehicle "weaving within its lane of travel, going side to side" in a "zigzag motion," in violation of A.C.O. 331.34.

{¶12} These factors lend credibility to the caller's account and provide sufficient indicia of reliability to justify the traffic stop. *See State v. Rapp,* 9th Dist. Wayne No. 12CA0062, 2013–Ohio–4408, ¶ 11; *State v. Saravia,* 9th Dist. Summit No. 25977, 2012–Ohio–1443, ¶ 8; *State v. Roberts,* 9th Dist. Summit No. 20355, 2001 WL 490014, *2 (May 9, 2001). Thus, after thoroughly reviewing the trial court's decision, we conclude that Sgt. Murphy acted upon reasonable suspicion based upon the information provided by the citizen informant, and the investigatory stop of Woody's vehicle was constitutionally valid.

{¶13} As such, Woody's first and second assignments of error are overruled.

### Assignment of Error III

**The trial court erred when it sentenced the Appellant to serve more than the minimum mandatory jail sanction then required by law.**

{¶14} In his third assignment of error, Woody argues that the trial court abused its discretion by sentencing him to a jail term that was higher than the minimum mandatory sentence. We disagree.

{¶15} A trial court generally has discretion in misdemeanor sentencing. *State v. Schneider*, 9th Dist. Wayne No. 09CA0026, 2009–Ohio–6025, ¶ 6. "Unless a sentence is contrary to law, we review challenges to misdemeanor sentencing for an abuse of discretion." *Id*. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶16} Woody pled no contest and was found guilty of operating a motor vehicle while under the influence of alcohol, as a second offense within six years, in violation of R.C. 4511.19(A)(1)(a). Driving under the influence of alcohol is a first degree misdemeanor. R.C. 4511.19(G)(1)(a). A misdemeanor of the first degree is punishable by no more than 180 days in jail. R.C. 2929.24(A)(1). R.C. 4511.19(G)(1)(b)(i) imposes a mandatory minimum jail term of ten consecutive days on offenders, such as Woody, who have previously been convicted of or pled guilty to one violation of R.C. 4511.19(A) or R.C. 4511.19(B) within the past six years. However, a trial court "may impose a jail term in addition to the ten-day mandatory jail term." *Id.* Thus, the trial court in this matter was permitted by statute to impose a sentence on Woody ranging from ten days to 180 days in jail. As the trial court sentenced Woody to 180 days in jail with 150 days suspended on conditions, Woody was sentenced to serve 30 days in jail, which falls squarely within the sentencing guideline.

{¶17} Woody contends that the trial court failed to consider the criteria listed in R.C. 2929.22 prior to sentencing him to a jail term above the mandatory minimum. It is well-recognized that a trial court abuses its discretion when, in imposing a sentence for a misdemeanor, it fails to consider the factors set forth in R.C. 2929.22. *State v. Smith,* 9th Dist. No. Wayne 05CA0006, 2006–Ohio–1558, ¶ 21; *see also State v. Jones,* 9th Dist. Wayne No. 02CA0018, 2003–Ohio–20, ¶ 7. "A trial court is presumed to have considered the factors set forth in R.C. 2929.22 'absent an affirmative showing to the contrary.'" *State v. Endress,* 9th Dist. Medina No. 08CA0011–M, 2008–Ohio–4498, ¶ 4, quoting *Smith* at ¶ 21. "The burden of demonstrating this error falls to the appellant." *Id.*, citing *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199 (1980). Moreover, "[w]hen a presentence investigation report is ordered, '[w]e presume that the court utilized the information in the report when issuing its sentence.'"

*State v. Pope,* 9th Dist. Medina No. 13CA0031–M, 2014–Ohio–2864, ¶ 14, quoting *State v. Coryell,* 9th Dist. Summit No. 24338, 2009–Ohio–1984, ¶ 19.

{¶18} Woody has failed to identify anything in the record suggesting that the trial court disregarded the sentencing factors, and the review of the record fails to yield an affirmative showing that the trial court failed to consider the factors set forth in R.C. 2929.22. Furthermore, the sentencing hearing transcript reflects that the trial court reviewed the presentence investigation report prior to sentencing. That report contained accounts of Woody's past OVIs, which the trial court found concerning. In light of Woody's history of driving under the influence of alcohol, and absent any indication that the trial court failed to consider the sentencing factors set forth in R.C. 2929.22, Woody's argument that the trial court's sentence constituted an abuse of discretion is not well-taken.

{¶19} Accordingly, Woody's third assignment of error is overruled.

III.

{¶20} With all of Woody's assignments of error having been overruled, the judgment of the Oberlin Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT


CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

MICHAEL E. STEPANIK, JACK W. BRADLEY, and R.J. BUDWAY, Attorneys at Law, for Appellant.

FRANK CARLSON, Prosecuting Attorney, for Appellee.